O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ALBERTO GUTIERREZ, | ) | Case No. CV 10-04428 DDP (CWx) |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING IN PART AND** |
| | ) | **DENYING IN PART DEFENDANTS'** |
| v. | ) | **MOTION FOR SUMMARY JUDGMENT** |
| | ) | |
| PHILLIP SOLANO, COUNTY OF LOS ANGELES, et al. | ) | [Docket No. 47] |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

Presently before the court is Defendants Phillip Solano, County of Los Angeles, and Russell Verduzco's (collectively, "Defendants") Motion for Summary Judgment ("Motion"). Having reviewed the parties' moving papers and heard oral argument, the court grants the Motion in part, denies the Motion in part, and adopts the following Order.

**I.  BACKGROUND**

On May 28, 2008, Plaintiff Alberto Gutierrez ("Plaintiff") was arrested for allegedly threatening his wife, Defendant Mayela Gutierrez Gil ("Gil"). Shortly after, on June 2, 2008, Gil took out a restraining order against Plaintiff ("Restraining Order").

On June 13, 2008, two deputies for the Los Angeles County Sheriff's Department ("Sheriff's Department") responded to a call from Gil, regarding an alleged violation of the Restraining Order. The deputies prepared an incident report. Defendant Phillip Solano, a Detective for the Sheriff's Department, then investigated the matter. On June 19, 2008, Detective Solano interviewed Plaintiff. On June 24, 2008, Detective Solano interviewed Gil, who stated that Plaintiff had tried to call her or had driven by her work or home on ten occasions between May 31 and June 23, 2008. (Pls.' Resp. to Defs.' Separate Statement of Undisputed Facts ("SS") ¶¶ 1-8.)

According to Defendants, Detective Solano investigated another alleged violation of the Restraining Order on September 6, 2008. Detective Solano and a fellow detective allegedly interviewed Gil, her sister, and another witness, who stated that they had seen Plaintiff near Gil's residence. Detective Solano allegedly interviewed Plaintiff as well, on September 9, 2008. According to the Detective, Plaintiff denied having been near Gil's residence and stated that he had been far from the area with friends. Plaintiff, however, allegedly refused to provide Detective Solano with names and phone numbers to verify his story. Detective Solano and two other detectives therefore took Plaintiff into custody on September 11, 2008. Plaintiff posted bail on September 12, 2008, and the case was submitted to the District Attorney's Office for filing consideration.[1] (Id. ¶¶ 9-14, 17.)

---

[1] In their Motion, Defendants state that the District Attorney's Office filed three charges against Plaintiff in late 2008, including one count of making criminal threats and two counts of violating a domestic relations court order. (Mot. at 5.) This
(continued...)

         On March 21, 2009, Defendant Russell Verduzco, a Sheriff's Department Deputy, responded to a report from Plaintiff that Gil had threatened him at a local gas station.  According to Plaintiff, Deputy Verduzco called him after investigating the incident and told him that the Deputy had sufficient evidence from gas station surveillance tapes to arrest Gil.  Deputy Verduzco, however, allegedly called Plaintiff again sometime later, telling Plaintiff that he had spoken with Detective Solano, and that Plaintiff "had better drop the complaint against" Gil or Deputy Verduzco "was going to make it his personal mission to make sure that 'it really got ugly' for Plaintiff."  Defendants claim, to the contrary, that Deputy Verduzco simply investigated the incident, concluded from the gas station video that Plaintiff and Gil had no contact with each other, and therefore informed Plaintiff that he would not file a crime report.  (Id. ¶¶ 22-24.)  Plaintiff also alleges that he contacted Detective Solano repeatedly during the investigations, but that the Detective would not return his phone calls, and once walked away when Plaintiff tried to talk to him in person at the Sheriff's station, stating that he could not help Plaintiff.  (Pls.' Ex. 3 in Supp. of Opp'n to Mot. ("Pls.' Ex. 3") at 117-18.)

         Plaintiff went to trial on the aforementioned criminal charges in April 2010.  (SS ¶ 18.)  During testimony, it was apparently disclosed for the first time that Detective Solano and Gil had communicated via Facebook, an online social networking site.  Specifically, Gil testified that she had accepted a "friendship request" from Detective Solano, and that Detective Solano had sent

---

[1](...continued)
alleged fact, however, is not set forth in any other document before this court.

her a message that he "missed" her.  Gil also testified that she and Detective Solano had "talked and conversed" about things other than the case.  Further, Gil stated that she had told Detective Solano, during trial and apparently in violation of the judge's order not to talk to witnesses, that Plaintiff's counsel knew about the "'Facebook' issue."  Also during the trial, Deputy Verduzco testified that he had spoken with Detective Solano about Plaintiff's report regarding Gil. (Pls.' Ex. 1 at 90-91, 12-17, 225.)  On April 12, 2010, the jury acquitted Plaintiff. (SS ¶ 21.)

Plaintiff then filed this civil rights action against Defendants, on June 16, 2010. (Id. ¶ 25.)  During a recent deposition, Detective Solano testified that the Facebook message he had sent to Gil read "como estas preciosa te estrano [sic] mucho." Detective Solano stated that, to him, this translates as "What's up, Babe, or how are you, babe or cutie or sweetie, haven't seen you or miss you."  He also agreed that the literal translation – "how are you precious . . . I miss you a lot" – was a fair translation.  Detective Solano further testified that he did not recall whether he or Gil had initiated the Facebook "friendship." (Pls.' Ex. 2 at 74-75, 81-82.)

In his Second Amended Complaint ("SAC"), Plaintiff alleges that Detective Solano and Gil "were involved in a romantic/sexual relationship."  He further alleges that Detective Solano and Gil "carried out a plan to falsely arrest and charge [Plaintiff] with crimes so as to ensure that [Gil] would be given custody of their children in pending divorce proceedings."  Specifically, Plaintiff asserts that Gil fabricated all of the alleged threats and Restraining Order violations, at the urging and with the assistance

4

of Detective Solano and Deputy Verduzco.  Likewise, Plaintiff alleges that the three Defendants concealed Deputy Verduzco's finding that Gil "was following and harassing Plaintiff."  (SAC ¶¶ 11-14, 37.)  Plaintiff contends that Detective Solano therefore arrested him without probable cause, and caused him: 1) "to be wrongfully imprisoned until he was able to secure bail"; 2) "to pay fees related to the bail"; and 3) "to hire criminal defense attorneys at great cost."  (Id. ¶ 17.)  Plaintiff also alleges that he suffered great emotional and psychological pain and suffering, due to being "wrongfully arrested, charged with criminal acts, jailed, detained, prosecuted and tried."  (Id. ¶¶ 25-28.)

Based on these facts, Plaintiff asserts three causes of action under 42 U.S.C. § 1983 ("Section 1983"): 1) that Defendant Solano violated his Fourth and Fourteenth Amendment rights by wrongfully arresting him without probable cause (Id. ¶¶ 19-30); 2) that Defendants Solano, Gil, and Verduzco conspired to violate his Fourteenth Amendment due process rights, by causing him to be falsely arrested, charged, and made to stand trial (Id. ¶¶ 31-40); and 3) that Defendant County of Los Angeles is liable for the violations, because it has an "established custom and practice whereby [Sheriff's Department deputies] were permitted to, and regularly did, pursue and maintain intimate personal relationships with the victims in cases that they were investigating." (Id. ¶¶ 41-58).  Plaintiff also alleges state law claims for false imprisonment and intentional infliction of emotional distress. (Id. ¶¶ 59-80.)

Defendants filed this Motion for Summary Judgment on November 14, 2011, arguing that: 1) all of Plaintiff's claims are barred,

5

because he was arrested based on probable cause; 2) Plaintiff's Section 1983 claims fail as a matter of law, because he was acquitted in his criminal trial; 3) Defendants Solano and Verduzco are entitled to qualified immunity; 4) Plaintiff's municipal liability claim fails because the County of Los Angeles had no unlawful custom or practice; and 5) Plaintiff's state law claims are time-barred.  (Mot. at 3-4.)

**II.  LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  In deciding a motion for summary judgment, the evidence is viewed in the light most favorable to the non-moving party, and all justifiable inferences are drawn in its favor.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).

A genuine issue exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," and material facts are those "that might affect the outcome of the suit under the governing law."  Id. at 248.  No genuine issue of fact exists "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

It is not enough for a party opposing summary judgment to "rest on mere allegations or denials of his pleadings."  Anderson, 477 U.S. at 259.  Instead, the nonmoving party must go beyond the pleadings to designate specific facts showing that there is a

6

genuine issue for trial. <u>Celotex</u>, 477 U.S. at 324. The "mere existence of a scintilla of evidence" in support of the nonmoving party's claim is insufficient to defeat summary judgment. <u>Anderson</u>, 477 U.S. at 252. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge," when he or she is ruling on a motion for summary judgment. <u>Id.</u> at 255.

**III. DISCUSSION**

    **A.   Municipal Liability and State Law Claims**

    As an initial matter, Plaintiff does not dispute Defendants' Motion as to municipal liability for the County of Los Angeles or as to his state law claims. Nor does the court find evidence of any relevant County actions or policies, or that the state law claims are not time-barred. The court therefore grants summary judgment for Defendants on these three causes of action.

    **B.   Probable Cause**

    Defendants argue that Plaintiff's remaining two causes of action are barred because Detective Solano arrested him based on probable cause. The court disagrees, as there is a genuine issue whether there was probable cause to arrest Plaintiff.

    Probable cause exists for a warrantless arrest where "under the totality of the facts and circumstances known to the arresting officer, a prudent person would have concluded that there was a fair probability that the suspect had committed a crime." <u>U.S. v. Struckman</u>, 603 F.3d 731, 739 (9th Cir. 2010) (internal quotation marks omitted). Here, Defendants claim that the facts and circumstances known to Detective Solano and supporting probable cause include: 1) Plaintiff's May 2008 arrest for threatening Gil;

7

1  2) Gil's subsequent Restraining Order against Plaintiff; 3) Gil's
2  June 2008 call and report regarding violations of the Restraining
3  Order; 4) Detective Solano's investigatory interview of Gil, where
4  she reported numerous additional violations by Plaintiff; 5) the
5  September 2008 alleged violation, confirmed by Gil, her sister, and
6  a witness, to Detective Solano; and 6) Plaintiff's refusal to
7  verify his alibi for the incident to Detective Solano.
8       However, viewing the evidence in the light most favorable to
9  Plaintiff and drawing all reasonable inference in his favor, a
10 reasonable jury could find that these were not the actual facts
11 known to Detective Solano.  As discussed, Plaintiff has presented
12 evidence that Detective Solano sent an arguably romantic message to
13 Gil on Facebook, and that Gil then warned Detective Solano during
14 trial that Plaintiff's counsel had discovered the Facebook
15 connection.  Gil also testified that she and Detective Solano had
16 talked and conversed about other things.  Based on these facts, a
17 reasonable jury <u>could</u> infer that Gil and Detective Solano had a
18 romantic relationship that preceded the trial.  In light of this
19 relationship, a jury might also credit Plaintiff's testimony that
20 Deputy Verduzco, after initially confirming from surveillance tapes
21 that Gil had harassed Plaintiff, had at Detective Solano's
22 insistence, threatened Plaintiff and demanded he drop the matter.
23      Lastly, after finding that Detective Solano had conspired to
24 suppress this evidence in Plaintiff's favor and threaten Plaintiff,
25 because of his romantic relationship with Plaintiff's wife, a jury
26 might also reasonably conclude that Detective Solano and Gil had
27 fabricated the other evidence against Plaintiff.  Indeed, the only
28 evidence presently before the court of the alleged facts supporting

8

probable cause comes from Detective Solano and Gil.[2]  Of course, a reasonable jury might instead find this evidence credible and Plaintiff's theory too far-fetched.  Defendants might also put forward additional corroborating evidence of probable cause.  But as the evidence stands now, the court cannot say that <u>no</u> rational trier of fact could find that Detective Solano lacked probable cause to arrest Plaintiff because he knew the alleged facts justifying the arrest to be false.

### C.   Plaintiff's Acquittal and <u>Brady</u> Violations

Both Defendants and Plaintiff frame at least some of his Section 1983 claims as <u>Brady</u>-related, since Plaintiff alleges that Detective Solano: 1) failed to disclose his alleged romantic relationship with Gil and fabrication of evidence against Plaintiff; and 2) conspired with Deputy Verduzco to suppress evidence favorable to Plaintiff.  See <u>Brady v. Maryland</u>, 373 U.S. 83 (1963).  Plaintiff contends that the disclosure of this evidence would have resulted in the criminal charges against him being "refused, rejected and/or dismissed."  (SAC ¶¶ 24, 36-37.)  Defendants, however, argue that there is no Section 1983 claim for failure to disclose evidence, absent a conviction in the underlying criminal action.  The court disagrees.

This issue has not yet been definitively resolved in the Ninth Circuit.  Although a split panel would have agreed with Defendants' position in a recent decision, that opinion was withdrawn and superseded.  See <u>Smith v. Almada</u>, 623 F.3d 1078 (9th Cir. 2010),

---

[2] The alleged corroboration by Gil's sister and another witness only appear in Detective Solano's own report.

<u>withdrawn and superseded by</u> 640 F.3d 931 (9th Cir. 2011).[3]  In its superseding opinion, the <u>Almada</u> court declined to reach the issue, but the judges separately voiced their opinions.  In a special concurrence, District Judge Gwin, sitting by designation, explained in detail why he would "not allow § 1983 claims for alleged <u>Brady</u> violations by a defendant who is ultimately acquitted."  640 F.3d at 945.  Judge Gould, in his own concurrence, indicated that he was personally inclined to agree with Judge Gwin, but had decided to leave the issue open at the urging of several colleagues on the court.  <u>Id.</u> at 940-41.  Finally, in dissent, Judge D.W. Nelson strongly disagreed on the <u>Brady</u> issue, arguing that a conviction is not a prerequisite to such a claim.  <u>See id.</u> at 945-48.

    The court finds Judge Nelson's reasoning persuasive.  As Judge Nelson summarized following a thoughtful analysis:  "On balance, the precedent in the Supreme Court and in our Circuit cuts against the idea that the right to the disclosure of exculpatory evidence is vitiated simply because a conviction does not result."  <u>Id.</u> at 947.  As Judge Nelson also explained, to hold otherwise would ignore <u>Brady</u>'s "two interdependent goals" of "protecting the right to a fair trial <u>and</u> discouraging misconduct on the part of police and prosecutors," by limiting the doctrine to "only the most egregious instances of evidentiary suppression--those that result in a conviction."  <u>Id.</u> at 947-48.  Thus, as she concluded:  "The fact that a defendant is fortunate enough to escape conviction does not absolve the state of responsibility for the breach of its <u>Brady</u>

---

[3]  Another panel has since considered the issue, in an unpublished and non-precedential memorandum disposition.  <u>See</u> <u>Puccetti v. Spencer</u>, No. 10-35895, 2011 WL 6292200 (9th Cir. Dec. 16, 2011).

obligations. The individual's right to a fair trial, mandated by the due process clause of the Fifth Amendment, does not hinge on the outcome of criminal proceedings." Id. at 948.

Judge Nelson's reasoning is also bolstered by an amicus brief submitted in that case,[4] which Plaintiff seems to have drawn from extensively. As the brief explains, the Brady doctrine itself is based on procedural due process. Accordingly, even if Brady did not directly apply when a defendant is acquitted, the government might still violate the underlying due process right by suppressing evidence. This determination would then be governed by the three factors set forth by the Supreme Court in Mathews v. Eldridge, 424 U.S. 319, 334-35 (1976). Indeed, the Court's analysis in United States v. Ruiz, 536 U.S. 622 (2002), strongly supports this conclusion. In Ruiz, the Court addressed whether the Fifth and Sixth Amendments require the government to disclose potential impeachment evidence prior to a plea agreement. See id. at 625. The Court first noted that "due process considerations" were "the very considerations that led [it] to find trial-related rights to exculpatory and impeachment information in Brady" and its progeny. The Court then applied the Mathews factors to determine whether due process supported the right alleged there. See id. at 631-33.[5]

---

[4] See Unopposed Motion of Amici Curiae National Police Accountability Project and Human Rights Defense Center to File Brief in Support of Plaintiff-Appellant's Petition for Rehearing En Banc, 623 F.3d 1078 (9th Cir. 2010) (Nos. 09-55346, 09-55334, 09-55345), 2010 WL 5650094.

[5] A number of circuit cases also support this analysis and the possibility of Brady or Brady-type due process violations absent any criminal conviction. See, e.g., McCann v. Mangialardi, 337 F.3d 782, 787-88 (7th Cir. 2003) (discussing Ruiz and finding it "highly likely that the Supreme Court would find a violation of the Due Process Clause" if prosecutors failed to disclose
(continued...)

1    Finally, the Fourteenth Amendment itself simply provides that
2 the state may not deprive a person of his or her liberty without
3 due process of law.  As the Supreme Court has recognized,
4 significant liberty deprivations can occur prior to trial.  See,
5 e.g., Gerstein v. Pugh, 420 U.S. 103, 114 (1975) (noting that
6 significant liberty restraints can accompany both pretrial
7 confinement - as it "may imperil the suspect's job, interrupt his
8 source of income, and impair his family relationships" - and even
9 pretrial release, when "accompanied by burdensome conditions");
10 United States v. Marion, 404 U.S. 307, 320 (1971) ("Arrest is a
11 public act that may seriously interfere with the defendant's
12 liberty, whether he is free on bail or not, and that may disrupt
13 his employment, drain his financial resources, curtail his
14 associations, subject him to public obloquy, and create anxiety in
15 him, his family and his friends.").  Likewise, criminal trial
16 proceedings often entail similar liberty deprivations, from loss of
17 one's employment, good name, and life savings, to continued custody
18 during trial.  Here, in particular, Plaintiff alleges that he spent
19 time in pretrial custody, then suffered the costs imposed by a full
20 criminal trial threatening additional incarceration.  When such a
21 loss of liberty is caused by the government's suppression of
22 exculpatory evidence, it may violate the Constitution.  And the
23 government cannot claim "no harm, no foul" because of the
24 fortuitousness of defendant's ultimate acquittal.

---

[5](...continued)
exculpatory evidence of actual innocence prior to a guilty plea); United States v. Barton, 995 F.2d 931, 935 (9th Cir. 1993) (holding that "the due process principles announced in Brady and its progeny" also apply to suppression hearings).

12

For all these reasons, the court finds that Plaintiff has a potential Section 1983 claim for <u>Brady</u> or <u>Brady</u>-type violations of his due process rights.  In light of the evidence discussed above, Defendants may have failed to disclose material impeachment and exculpatory evidence, thereby prejudicing Plaintiff.  The court therefore denies Defendants' Motion as to Plaintiff's first two causes of action.  The court, however, declines to conduct the constitutional analysis that may ultimately be required, prior to further factual development.  As discussed, there are genuine issues as to what, if any, impeaching or exculpatory evidence Defendants failed to disclose.

### D. Qualified Immunity

In support of qualified immunity for Detective Solano and Deputy Velasco, Defendants simply repeat that there was probable cause to arrest Plaintiff, and that the Detective and Deputy did not fabricate or conceal any evidence.  As discussed, there are genuine disputes as to these material facts.  The court therefore denies Defendants' Motion as to qualified immunity.

## IV. CONCLUSION

For the foregoing reasons, the court grants Defendants' Motion for Summary Judgment on Counts Three, Four, and Five of Plaintiff's Second Amended Complaint, and denies the Motion on Counts One and Two.

IT IS SO ORDERED.

Dated: January 17, 2012

DEAN D. PREGERSON
United States District Judge

13