O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ALBERTO GUTIERREZ,                    )   Case No. CV 10-04428 DDP (CWx)
                                      )
                 Plaintiff,           )   **ORDER GRANTING IN PART AND**
                                      )   **DENYING IN PART DEFENDANTS'**
        v.                            )   **MOTION FOR SUMMARY JUDGMENT**
                                      )
PHILLIP SOLANO, COUNTY OF             )   [Docket No. 47]
LOS ANGELES, et al.                   )
                                      )
                 Defendants.          )
                                      )
_____       )

     Presently before the court is Defendants Phillip Solano,
County of Los Angeles, and Russell Verduzco's (collectively,
"Defendants") Motion for Summary Judgment ("Motion").  Having
reviewed the parties' moving papers and heard oral argument, the
court grants the Motion in part, denies the Motion in part, and
adopts the following Order.

**I.    BACKGROUND**

     On May 28, 2008, Plaintiff Alberto Gutierrez ("Plaintiff") was
arrested for allegedly threatening his wife, Defendant Mayela
Gutierrez Gil ("Gil").  Shortly after, on June 2, 2008, Gil took
out a restraining order against Plaintiff ("Restraining Order").

1    On June 13, 2008, two deputies for the Los Angeles County

2  Sheriff's Department ("Sheriff's Department") responded to a call

3  from Gil, regarding an alleged violation of the Restraining Order.

4  The deputies prepared an incident report.  Defendant Phillip

5  Solano, a Detective for the Sheriff's Department, then investigated

6  the matter.  On June 19, 2008, Detective Solano interviewed

7  Plaintiff.  On June 24, 2008, Detective Solano interviewed Gil, who

8  stated that Plaintiff had tried to call her or had driven by her

9  work or home on ten occasions between May 31 and June 23, 2008.

10  (Pls.' Resp. to Defs.' Separate Statement of Undisputed Facts

11  ("SS") ¶¶ 1-8.)

12    According to Defendants, Detective Solano investigated another

13  alleged violation of the Restraining Order on September 6, 2008.

14  Detective Solano and a fellow detective allegedly interviewed Gil,

15  her sister, and another witness, who stated that they had seen

16  Plaintiff near Gil's residence.  Detective Solano allegedly

17  interviewed Plaintiff as well, on September 9, 2008.  According to

18  the Detective, Plaintiff denied having been near Gil's residence

19  and stated that he had been far from the area with friends.

20  Plaintiff, however, allegedly refused to provide Detective Solano

21  with names and phone numbers to verify his story.  Detective Solano

22  and two other detectives therefore took Plaintiff into custody on

23  September 11, 2008.  Plaintiff posted bail on September 12, 2008,

24  and the case was submitted to the District Attorney's Office for

25  filing consideration.[1]  (Id. ¶¶ 9-14, 17.)

26    _____
        [1]  In their Motion, Defendants state that the District
27  Attorney's Office filed three charges against Plaintiff in late
   2008, including one count of making criminal threats and two counts
28  of violating a domestic relations court order.  (Mot. at 5.)  This
                                                    (continued...)

1    On March 21, 2009, Defendant Russell Verduzco, a Sheriff's

2 Department Deputy, responded to a report from Plaintiff that Gil

3 had threatened him at a local gas station.  According to Plaintiff,

4 Deputy Verduzco called him after investigating the incident and

5 told him that the Deputy had sufficient evidence from gas station

6 surveillance tapes to arrest Gil.  Deputy Verduzco, however,

7 allegedly called Plaintiff again sometime later, telling Plaintiff

8 that he had spoken with Detective Solano, and that Plaintiff "had

9 better drop the complaint against" Gil or Deputy Verduzco "was

10 going to make it his personal mission to make sure that 'it really

11 got ugly' for Plaintiff."  Defendants claim, to the contrary, that

12 Deputy Verduzco simply investigated the incident, concluded from

13 the gas station video that Plaintiff and Gil had no contact with

14 each other, and therefore informed Plaintiff that he would not file

15 a crime report.  (<u>Id.</u> ¶¶ 22-24.)  Plaintiff also alleges that he

16 contacted Detective Solano repeatedly during the investigations,

17 but that the Detective would not return his phone calls, and once

18 walked away when Plaintiff tried to talk to him in person at the

19 Sheriff's station, stating that he could not help Plaintiff.

20 (Pls.' Ex. 3 in Supp. of Opp'n to Mot. ("Pls.' Ex. 3") at 117-18.)

21    Plaintiff went to trial on the aforementioned criminal charges

22 in April 2010.  (SS ¶ 18.)  During testimony, it was apparently

23 disclosed for the first time that Detective Solano and Gil had

24 communicated via Facebook, an online social networking site.

25 Specifically, Gil testified that she had accepted a "friendship

26 request" from Detective Solano, and that Detective Solano had sent

27 _____
        [1](...continued)

28 alleged fact, however, is not set forth in any other document
before this court.

1  her a message that he "missed" her.  Gil also testified that she

2  and Detective Solano had "talked and conversed" about things other

3  than the case.  Further, Gil stated that she had told Detective

4  Solano, during trial and apparently in violation of the judge's

5  order not to talk to witnesses, that Plaintiff's counsel knew about

6  the "'Facebook' issue."  Also during the trial, Deputy Verduzco

7  testified that he had spoken with Detective Solano about

8  Plaintiff's report regarding Gil.  (Pls.' Ex. 1 at 90-91, 12-17,

9  225.)  On April 12, 2010, the jury acquitted Plaintiff.  (SS ¶ 21.)

10  Plaintiff then filed this civil rights action against

11  Defendants, on June 16, 2010.  (Id. ¶ 25.)  During a recent

12  deposition, Detective Solano testified that the Facebook message he

13  had sent to Gil read "como estas preciosa te estrano [sic] mucho."

14  Detective Solano stated that, to him, this translates as "What's

15  up, Babe, or how are you, babe or cutie or sweetie, haven't seen

16  you or miss you."  He also agreed that the literal translation -

17  "how are you precious . . . I miss you a lot" - was a fair

18  translation.  Detective Solano further testified that he did not

19  recall whether he or Gil had initiated the Facebook "friendship."

20  (Pls.' Ex. 2 at 74-75, 81-82.)

21  In his Second Amended Complaint ("SAC"), Plaintiff alleges

22  that Detective Solano and Gil "were involved in a romantic/sexual

23  relationship."  He further alleges that Detective Solano and Gil

24  "carried out a plan to falsely arrest and charge [Plaintiff] with

25  crimes so as to ensure that [Gil] would be given custody of their

26  children in pending divorce proceedings."  Specifically, Plaintiff

27  asserts that Gil fabricated all of the alleged threats and

28  Restraining Order violations, at the urging and with the assistance

4

1  of Detective Solano and Deputy Verduzco.  Likewise, Plaintiff

2  alleges that the three Defendants concealed Deputy Verduzco's

3  finding that Gil "was following and harassing Plaintiff."  (SAC ¶¶

4  11-14, 37.)  Plaintiff contends that Detective Solano therefore

5  arrested him without probable cause, and caused him: 1) "to be

6  wrongfully imprisoned until he was able to secure bail"; 2) "to pay

7  fees related to the bail"; and 3) "to hire criminal defense

8  attorneys at great cost."  (Id. ¶ 17.)  Plaintiff also alleges that

9  he suffered great emotional and psychological pain and suffering,

10 due to being "wrongfully arrested, charged with criminal acts,

11 jailed, detained, prosecuted and tried."  (Id. ¶¶ 25-28.)

12     Based on these facts, Plaintiff asserts three causes of action

13 under 42 U.S.C. § 1983 ("Section 1983"): 1) that Defendant Solano

14 violated his Fourth and Fourteenth Amendment rights by wrongfully

15 arresting him without probable cause (Id. ¶¶ 19-30); 2) that

16 Defendants Solano, Gil, and Verduzco conspired to violate his

17 Fourteenth Amendment due process rights, by causing him to be

18 falsely arrested, charged, and made to stand trial (Id. ¶¶ 31-40);

19 and 3) that Defendant County of Los Angeles is liable for the

20 violations, because it has an "established custom and practice

21 whereby [Sheriff's Department deputies] were permitted to, and

22 regularly did, pursue and maintain intimate personal relationships

23 with the victims in cases that they were investigating."  (Id. ¶¶

24 41-58).  Plaintiff also alleges state law claims for false

25 imprisonment and intentional infliction of emotional distress.

26 (Id. ¶¶ 59-80.)

27     Defendants filed this Motion for Summary Judgment on November

28 14, 2011, arguing that: 1) all of Plaintiff's claims are barred,

because he was arrested based on probable cause; 2) Plaintiff's
Section 1983 claims fail as a matter of law, because he was
acquitted in his criminal trial; 3) Defendants Solano and Verduzco
are entitled to qualified immunity; 4) Plaintiff's municipal
liability claim fails because the County of Los Angeles had no
unlawful custom or practice; and 5) Plaintiff's state law claims
are time-barred.  (Mot. at 3-4.)

**II.   LEGAL STANDARD**

Summary judgment is appropriate where "the movant shows that
there is no genuine dispute as to any material fact and the movant
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 324
(1986).  In deciding a motion for summary judgment, the evidence is
viewed in the light most favorable to the non-moving party, and all
justifiable inferences are drawn in its favor.  Anderson v. Liberty
Lobby, Inc., 477 U.S. 242, 255 (1986).

A genuine issue exists if "the evidence is such that a
reasonable jury could return a verdict for the nonmoving party,"
and material facts are those "that might affect the outcome of the
suit under the governing law."  Id. at 248.  No genuine issue of
fact exists "[w]here the record taken as a whole could not lead a
rational trier of fact to find for the non-moving party."
Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574,
587 (1986).

It is not enough for a party opposing summary judgment to
"rest on mere allegations or denials of his pleadings."  Anderson,
477 U.S. at 259.  Instead, the nonmoving party must go beyond the
pleadings to designate specific facts showing that there is a

6

genuine issue for trial.  <u>Celotex</u>, 477 U.S. at 324.  The "mere
existence of a scintilla of evidence" in support of the nonmoving
party's claim is insufficient to defeat summary judgment.
<u>Anderson</u>, 477 U.S. at 252.  "Credibility determinations, the
weighing of the evidence, and the drawing of legitimate inferences
from the facts are jury functions, not those of a judge," when he
or she is ruling on a motion for summary judgment.  <u>Id.</u> at 255.

**III. DISCUSSION**

**A.   Municipal Liability and State Law Claims**

As an initial matter, Plaintiff does not dispute Defendants'
Motion as to municipal liability for the County of Los Angeles or
as to his state law claims.  Nor does the court find evidence of
any relevant County actions or policies, or that the state law
claims are not time-barred.  The court therefore grants summary
judgment for Defendants on these three causes of action.

**B.   Probable Cause**

Defendants argue that Plaintiff's remaining two causes of
action are barred because Detective Solano arrested him based on
probable cause.  The court disagrees, as there is a genuine issue
whether there was probable cause to arrest Plaintiff.

Probable cause exists for a warrantless arrest where "under
the totality of the facts and circumstances known to the arresting
officer, a prudent person would have concluded that there was a
fair probability that the suspect had committed a crime." <u>U.S. v.
Struckman</u>, 603 F.3d 731, 739 (9th Cir. 2010) (internal quotation
marks omitted).  Here, Defendants claim that the facts and
circumstances known to Detective Solano and supporting probable
cause include: 1) Plaintiff's May 2008 arrest for threatening Gil;

2) Gil's subsequent Restraining Order against Plaintiff; 3) Gil's June 2008 call and report regarding violations of the Restraining Order; 4) Detective Solano's investigatory interview of Gil, where she reported numerous additional violations by Plaintiff; 5) the September 2008 alleged violation, confirmed by Gil, her sister, and a witness, to Detective Solano; and 6) Plaintiff's refusal to verify his alibi for the incident to Detective Solano.

However, viewing the evidence in the light most favorable to Plaintiff and drawing all reasonable inference in his favor, a reasonable jury could find that these were not the actual facts known to Detective Solano. As discussed, Plaintiff has presented evidence that Detective Solano sent an arguably romantic message to Gil on Facebook, and that Gil then warned Detective Solano during trial that Plaintiff's counsel had discovered the Facebook connection. Gil also testified that she and Detective Solano had talked and conversed about other things. Based on these facts, a reasonable jury could infer that Gil and Detective Solano had a romantic relationship that preceded the trial. In light of this relationship, a jury might also credit Plaintiff's testimony that Deputy Verduzco, after initially confirming from surveillance tapes that Gil had harassed Plaintiff, had at Detective Solano's insistence, threatened Plaintiff and demanded he drop the matter.

Lastly, after finding that Detective Solano had conspired to suppress this evidence in Plaintiff's favor and threaten Plaintiff, because of his romantic relationship with Plaintiff's wife, a jury might also reasonably conclude that Detective Solano and Gil had fabricated the other evidence against Plaintiff. Indeed, the only evidence presently before the court of the alleged facts supporting

1  probable cause comes from Detective Solano and Gil.[2]  Of course, a

2  reasonable jury might instead find this evidence credible and

3  Plaintiff's theory too far-fetched.  Defendants might also put

4  forward additional corroborating evidence of probable cause.  But

5  as the evidence stands now, the court cannot say that no rational

6  trier of fact could find that Detective Solano lacked probable

7  cause to arrest Plaintiff because he knew the alleged facts

8  justifying the arrest to be false.

9       **C.   Plaintiff's Acquittal and <u>Brady</u> Violations**

10      Both Defendants and Plaintiff frame at least some of his

11  Section 1983 claims as <u>Brady</u>-related, since Plaintiff alleges that

12  Detective Solano: 1) failed to disclose his alleged romantic

13  relationship with Gil and fabrication of evidence against

14  Plaintiff; and 2) conspired with Deputy Verduzco to suppress

15  evidence favorable to Plaintiff.  <u>See</u> <u>Brady v. Maryland</u>, 373 U.S.

16  83 (1963).  Plaintiff contends that the disclosure of this evidence

17  would have resulted in the criminal charges against him being

18  "refused, rejected and/or dismissed."  (SAC ¶¶ 24, 36-37.)

19  Defendants, however, argue that there is no Section 1983 claim for

20  failure to disclose evidence, absent a conviction in the underlying

21  criminal action.  The court disagrees.

22      This issue has not yet been definitively resolved in the Ninth

23  Circuit.  Although a split panel would have agreed with Defendants'

24  position in a recent decision, that opinion was withdrawn and

25  superseded.  <u>See</u> <u>Smith v. Almada</u>, 623 F.3d 1078 (9th Cir. 2010),

26

27
_____

28      [2]  The alleged corroboration by Gil's sister and another
    witness only appear in Detective Solano's own report.

1  <u>withdrawn and superseded by</u> 640 F.3d 931 (9th Cir. 2011).[3]  In its

2  superseding opinion, the <u>Almada</u> court declined to reach the issue,

3  but the judges separately voiced their opinions.  In a special

4  concurrence, District Judge Gwin, sitting by designation, explained

5  in detail why he would "not allow § 1983 claims for alleged <u>Brady</u>

6  violations by a defendant who is ultimately acquitted."  640 F.3d

7  at 945.  Judge Gould, in his own concurrence, indicated that he was

8  personally inclined to agree with Judge Gwin, but had decided to

9  leave the issue open at the urging of several colleagues on the

10 court.  <u>Id.</u> at 940-41.  Finally, in dissent, Judge D.W. Nelson

11 strongly disagreed on the <u>Brady</u> issue, arguing that a conviction is

12 not a prerequisite to such a claim.  <u>See id.</u> at 945-48.

13     The court finds Judge Nelson's reasoning persuasive.  As Judge

14 Nelson summarized following a thoughtful analysis:  "On balance,

15 the precedent in the Supreme Court and in our Circuit cuts against

16 the idea that the right to the disclosure of exculpatory evidence

17 is vitiated simply because a conviction does not result."  <u>Id.</u> at

18 947.  As Judge Nelson also explained, to hold otherwise would

19 ignore <u>Brady</u>'s "two interdependent goals" of "protecting the right

20 to a fair trial <u>and</u> discouraging misconduct on the part of police

21 and prosecutors," by limiting the doctrine to "only the most

22 egregious instances of evidentiary suppression--those that result

23 in a conviction."  <u>Id.</u> at 947-48.  Thus, as she concluded:  "The

24 fact that a defendant is fortunate enough to escape conviction does

25 not absolve the state of responsibility for the breach of its <u>Brady</u>

26

27        [3]  Another panel has since considered the issue, in an
   unpublished and non-precedential memorandum disposition.  <u>See</u>
28 <u>Puccetti v. Spencer</u>, No. 10-35895, 2011 WL 6292200 (9th Cir. Dec.
   16, 2011).

1    obligations.  The individual's right to a fair trial, mandated by

2    the due process clause of the Fifth Amendment, does not hinge on

3    the outcome of criminal proceedings."  <u>Id.</u> at 948.

4         Judge Nelson's reasoning is also bolstered by an amicus brief

5    submitted in that case,[4] which Plaintiff seems to have drawn from

6    extensively.  As the brief explains, the <u>Brady</u> doctrine itself is

7    based on procedural due process.  Accordingly, even if <u>Brady</u> did

8    not directly apply when a defendant is acquitted, the government

9    might still violate the underlying due process right by suppressing

10   evidence.  This determination would then be governed by the three

11   factors set forth by the Supreme Court in <u>Mathews v. Eldridge</u>, 424

12   U.S. 319, 334-35 (1976).  Indeed, the Court's analysis in <u>United</u>

13   <u>States v. Ruiz</u>, 536 U.S. 622 (2002), strongly supports this

14   conclusion.  In <u>Ruiz</u>, the Court addressed whether the Fifth and

15   Sixth Amendments require the government to disclose potential

16   impeachment evidence prior to a plea agreement.  <u>See id.</u> at 625.

17   The Court first noted that "due process considerations" were "the

18   very considerations that led [it] to find trial-related rights to

19   exculpatory and impeachment information in <u>Brady</u>" and its progeny.

20   The Court then applied the <u>Mathews</u> factors to determine whether due

21   process supported the right alleged there.  <u>See id.</u> at 631-33.[5]

22        [4]   <u>See</u> Unopposed Motion of Amici Curiae National Police
     Accountability Project and Human Rights Defense Center to File
23   Brief in Support of Plaintiff-Appellant's Petition for Rehearing En
     Banc, 623 F.3d 1078 (9th Cir. 2010) (Nos. 09-55346, 09-55334, 09-
24   55345), 2010 WL 5650094.

25        [5]   A number of circuit cases also support this analysis and
     the possibility of <u>Brady</u> or <u>Brady</u>-type due process violations
26   absent any criminal conviction.  <u>See, e.g.</u>, <u>McCann v. Mangialardi</u>,
     337 F.3d 782, 787-88 (7th Cir. 2003) (discussing <u>Ruiz</u> and finding
27   it "highly likely that the Supreme Court would find a violation of
     the Due Process Clause" if prosecutors failed to disclose
28                                                          (continued...)

1    Finally, the Fourteenth Amendment itself simply provides that

2 the state may not deprive a person of his or her liberty without

3 due process of law.  As the Supreme Court has recognized,

4 significant liberty deprivations can occur prior to trial.  <u>See,</u>

5 <u>e.g.</u>, <u>Gerstein v. Pugh</u>, 420 U.S. 103, 114 (1975) (noting that

6 significant liberty restraints can accompany both pretrial

7 confinement - as it "may imperil the suspect's job, interrupt his

8 source of income, and impair his family relationships" - and even

9 pretrial release, when "accompanied by burdensome conditions");

10 <u>United States v. Marion</u>, 404 U.S. 307, 320 (1971) ("Arrest is a

11 public act that may seriously interfere with the defendant's

12 liberty, whether he is free on bail or not, and that may disrupt

13 his employment, drain his financial resources, curtail his

14 associations, subject him to public obloquy, and create anxiety in

15 him, his family and his friends.").  Likewise, criminal trial

16 proceedings often entail similar liberty deprivations, from loss of

17 one's employment, good name, and life savings, to continued custody

18 during trial.  Here, in particular, Plaintiff alleges that he spent

19 time in pretrial custody, then suffered the costs imposed by a full

20 criminal trial threatening additional incarceration.  When such a

21 loss of liberty is caused by the government's suppression of

22 exculpatory evidence, it may violate the Constitution.  And the

23 government cannot claim "no harm, no foul" because of the

24 fortuitousness of defendant's ultimate acquittal.

25

26    [5](...continued)
27 exculpatory evidence of actual innocence prior to a guilty plea);
   <u>United States v. Barton</u>, 995 F.2d 931, 935 (9th Cir. 1993) (holding
28 that "the due process principles announced in <u>Brady</u> and its
   progeny" also apply to suppression hearings).

1    For all these reasons, the court finds that Plaintiff has a
2  potential Section 1983 claim for _Brady_ or _Brady_-type violations of
3  his due process rights.  In light of the evidence discussed above,
4  Defendants may have failed to disclose material impeachment and
5  exculpatory evidence, thereby prejudicing Plaintiff.  The court
6  therefore denies Defendants' Motion as to Plaintiff's first two
7  causes of action.  The court, however, declines to conduct the
8  constitutional analysis that may ultimately be required, prior to
9  further factual development.  As discussed, there are genuine
10  issues as to what, if any, impeaching or exculpatory evidence
11  Defendants failed to disclose.

12    **D.   Qualified Immunity**

13    In support of qualified immunity for Detective Solano and
14  Deputy Velasco, Defendants simply repeat that there was probable
15  cause to arrest Plaintiff, and that the Detective and Deputy did
16  not fabricate or conceal any evidence.  As discussed, there are
17  genuine disputes as to these material facts.  The court therefore
18  denies Defendants' Motion as to qualified immunity.

19  **IV.   CONCLUSION**

20    For the foregoing reasons, the court grants Defendants' Motion
21  for Summary Judgment on Counts Three, Four, and Five of Plaintiff's
22  Second Amended Complaint, and denies the Motion on Counts One and
23  Two.

24  IT IS SO ORDERED.

25

26  Dated: January 17, 2012

27                                    DEAN D. PREGERSON
                                      United States District Judge

28

13